IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| HARBOR ALUMINUM INTELLIGENCE UNIT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>METAL EXCHANGE LLC<br><br>Defendant. | Civil Case No.: 1:24-cv-00033<br><br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff Harbor Aluminum Intelligence Unit, LLC ("Harbor"), by and through its undersigned counsel, brings this action against Metal Exchange LLC ("Metal Exchange") and alleges as follows:

## NATURE OF ACTION

1. This is an action for damages and injunctive relief arising from willful copyright infringement and flagrant violations under contract. Harbor is one of the world's most trusted sources of proprietary market research, intelligence and forecasts for the aluminum industry. Harbor's subscribers, like Metal Exchange, rely on Harbor's detailed research and analysis to better understand the immediate and future effects of regional and global industry and market trends as well as government policy on the aluminum supply chain and prices. Harbor's market intelligence allows Metal Exchange to more knowledgeably manage, procure, sell or trade aluminum related products and/or related services.

2. Metal Exchange knows that Harbor's market intelligence is incredibly valuable to its business. For nearly a decade, Metal Exchange has subscribed to Harbor's proprietary reports, alerts and commentaries, pursuant to terms and conditions designed to protect Harbor's

1

content.  Under the terms of its subscription, Metal Exchange is required to identify – and pay for – individual subscribers at the company who are authorized to receive Harbor's content. Those terms require Metal Exchange users to be located at the same company site.  Importantly, they prohibit Metal Exchange users from sharing Harbor's market intelligence with unauthorized users, including third parties.

3. Despite its awareness of these restrictions, Metal Exchange has actively sought to undermine them.  It created a company distribution list to avoid having to disclose and pay for additional users.

4. Even worse, Metal Exchange took it upon itself to share Harbor's market intelligence with other industry players, free of charge, including the CEO of one company that used to be a Harbor subscriber.  That company no longer needs a subscription because it receives Harbor's content for free from Metal Exchange.  But that was just the tip of the iceberg.

5. After Metal Exchange was caught violating its subscription and Harbor was forced to give notice of its intent to terminate, Metal Exchange *continued* to disseminate Harbor's proprietary content to unauthorized users.  In other words, Metal Exchange simply does not care about its contractual obligations to Harbor or Harbor's valuable intellectual property rights.

6. Left with no other choice, Harbor files this lawsuit to seek redress, in the form of damages and injunctive relief, for injuries that Harbor sustained as a result of Metal Exchange's copyright infringement and breach of the parties' subscription agreement.

## THE PARTIES

7. Plaintiff Harbor is a Texas limited liability company, with its principal place of business in Austin, Texas.

8.      Upon information and belief, defendant Metal Exchange LLC, is a limited liability company organized under the laws of Missouri, with its principal place of business in Clayton, Missouri.[1]

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction over Harbor's claims for copyright infringement arising under the Copyright Act, 17 U.S.C. § 101, *et seq*., pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has supplemental jurisdiction over Harbor's breach of contract claim arising under state law pursuant to 28 U.S.C. § 1367(a) because that claim is so related to the federal law claim that it forms part of the same case or controversy.

10.     This Court has personal jurisdiction over Metal Exchange because, upon information and belief, it transacts business within this District and has caused injury to Harbor's interests within this District.  Moreover, Metal Exchange consented to jurisdiction in this District by entering into the Subscription Agreement, which provides that "[t]he sole jurisdiction and venue for any action that may arise under or in relation to the subject matter hereof shall be the state or federal courts in Austin, Travis County, Texas."  *See* Exhibit 1, at § 9.3.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

*Harbor's Market Intelligence*

12.     Aluminum plays a vital role in the global economy and is a strategic component of the transportation, energy, defense, construction, and packaging industries.  The aluminum industry is global and has an extensive supply chain that involves mining, refining, smelting,

---

[1] According to records on file with the Missouri Secretary of State, Metal Exchange LLC was formerly known as Metal Exchange Corporation.  It converted to Metal Exchange LLC, pursuant to a certificate of conversion effective December 28, 2022.  Under the laws of the State of Missouri, Metal Exchange LLC assumed the obligations and liabilities of Metal Exchange Corporation.

3

recycling, remelting and manufacturing.  Aluminum products are numerous and widely traded including on three major exchanges: the London Metal Exchange (LME), the Chicago Mercantile Exchange (COMEX), and the Shanghai Futures Exchange (SHFE).  Prices of aluminum products can fluctuate daily, affecting not only the aluminum markets but also other industries in the global economy.

13. Harbor is a global leader in providing aluminum industry and market intelligence, data, analysis, outlook and forecasts.  Aluminum producers, recyclers, manufacturers, distributors, end-consumers, merchants, banks, investors, and regulators around the world turn to Harbor to supply up-to-date specialized regional and global aluminum industry and market expertise.

14. Harbor has invested heavily in and relies upon the extensive experience of its on-staff industry specialists and experts to research and assesses more than 150 different aluminum prices and product premiums – more than any other journalistic or consulting group in the world.  This, along with its market intelligence and data, industry insight, and outlook commentary, are compiled and arranged into detailed reports.  Harbor supplies its market intelligence through a subscription based service that delivers to Harbor's subscribers an array of daily, weekly, monthly and quarterly alerts by email and through its mobile application available on Apple and Android devices, which can be purchased by subscribers on an individual or bundled basis ("Market Intelligence").

15. Harbor's Market Intelligence does not feature any advertisements or sponsors.  It therefore depends on paid subscriptions to sustain the viability of Harbor's best-in-class commentary, forecasts and analyses.

16. Harbor has implemented several safeguards to protect its highly-valuable Market Intelligence. First, the terms of Harbor's subscription agreement require each company subscriber to designate and disclose a pre-approved list of users who are authorized to receive Harbor's Market Intelligence. Harbor prohibits subscribers from sharing its content with non-authorized users. Second, to maintain control over its Market Intelligence and reduce the risk of unlawful dissemination, Harbor requires its users be located at the same company site. Third, Harbor requires it subscribers to notify Harbor if they become aware of any of unauthorized uses or suspected infringements of Harbor's intellectual property. Fourth, users cannot access Harbor's Market Intelligence through its mobile application without the use of login credentials supplied by Harbor. Fifth, Harbor copyright and confidentiality notices are published on its website, in its mobile application, and in emails transmitting Harbor's Market Intelligence (including on the reports themselves) informing subscribers of the confidential and proprietary nature of the content and prohibiting the reproduction and distribution of Harbor's materials without prior written authorization, as shown below:

> **Confidential Notice.** This report and its content is confidential, proprietary, in some cases trademarked and/or copyrighted, and constitute trade secret(s) material of HARBOR Aluminum Intelligence Unit, LLC, there use is for authorized subscribers only. No portion of this report may be photocopied, reproduced, retransmitted, distributed or otherwise redistributed electronically, in print or verbally without prior written authorization from HARBOR Aluminum Intelligence Unit, LLC.

17. In addition, and as discussed in further detail below, Harbor is the sole owner and proprietor of all right, title and interest in and to the copyrights in its Market Intelligence, many of which are registered with the U.S. Copyright Office.

*Metal Exchange Subscribes to Harbor's Market Intelligence*

18. For approximately the last ten years, Metal Exchange has been a subscriber of Harbor's Market Intelligence, with its most recent subscription period beginning on February 15,

2023 and ending on February 14, 2024 by its terms. A true and correct copy of Harbor's invoice and subscription agreement with Metal Exchange is attached hereto as Exhibit 1 (the "Subscription Agreement").

19. Harbor's Subscription Agreement with Metal Exchange grants authorized users at Metal Exchange access to the following subscription Harbor packages: (1) the "Annual Subscription to Aluminum Intelligence Services Package;" (2) the Annual Subscription to Aluminum Flat Rolled Products Intel Service Package;" and (3) the "Annual Subscription to Scrap & Secondary Aluminum Service Package." These packages consist of the following reports:

| Title | Frequency of Circulation |
|---|---|
| Aluminum Intelligence Report[2] | Monthly |
| Aluminum Production Intelligence[3] | Monthly |
| LME Aluminum Price Outlook Report | Monthly |
| Daily LME Aluminum & Product Premiums Intelligence | Daily |
| Aluminum Product Premiums Alerts & Special Analysis | Several per week |
| Aluminum Product Premiums Outlook | Weekly |
| US Billet Market Updates and Alerts | Weekly |
| European Billet Market Updates and Alerts | Weekly |
| Aluminum Flat Rolled Products Intelligence & Outlook Report | Monthly |
| US Rolling Mill Alerts | Several per month |
| European Rolling Mill Alerts | Several per month |
| North America and Europe Aluminum Scrap & Secondary Market Intel Report | Weekly and daily |

20. Among other things, the Subscription Agreement requires Metal Exchange to specifically designate and disclose to Harbor the users who are authorized to receive Harbor's Market Intelligence. *See* Ex. 1 at §§ 2.2, 2.3. Metal Exchange understood this obligation and did so in connection with its renewal of the Subscription Agreement. *See* Exhibit 2. Users

---

[2] This report includes a Harbor prepared .xls file containing detailed primary aluminum consumption, production, inventory and price data.
[3] The report includes a Harbor prepared .xls file containing detailed primary aluminum production data and forecasts.

designated by Metal Exchange are required to adhere to the terms of Harbor's Subscription Agreement. *Id.* Further, all designated users must reside at the same site – not at different locations throughout the company. *Id.* at §§ 2.4, 6.3.

21. The Subscription Agreement further provides that Metal Exchange may designate additional users, but that doing so commands "a cost for each additional user" in the amount of "50% of the subscription cost." *Id.* at § 2.3.

22. While Harbor's standard subscription only provides for two authorized users at a single site, "unless otherwise specified," Metal Exchange's invoice specified "otherwise": it provides for "unlimited users" at one location within the company, provided they are designated by Metal Exchange and reside at the same location at the company, all for a pre-determined subscription fee that was agreed upon by Harbor and Metal Exchange.

23. In accordance with the Subscription Agreement, Metal Exchange designated the following users to receive Harbor's Market Intelligence:

>Edwin Van Norden
>Chris Luba
>Bill Paradoski
>M. Lipski
>Ed Merz
>John Stitts
>Joe Kira
>Thorsten Rogner
>D. Schwab
>Detlev Kluhn
>C. Weber
>Kim Gurlen
>Kevin Schmidt
>Michael Kelley
>T. Bahr
>Ryan Adams
>Rick Merluzzi
>S. Stepanek
>Steve Kalfus
>Vijay Natarajan

       Matt Rohm
       Brad Rutledge

*See* Ex. 2.

24. In addition, by entering into the Subscription Agreement, Metal Exchange agreed that it will not itself duplicate or reproduce, sublicense or access Harbor's Market Intelligence or allow third parties the opportunity to do so. *See* Ex. 1 at §§ 6.3, 6.4.

***Metal Exchange Violates the Subscription Agreement***

25. Notwithstanding the prohibitions set forth in Harbor's Subscription Agreement, Harbor recently discovered extensive (and until it was forced to terminate) near-daily misuse of its Market Intelligence by Metal Exchange. Specifically, Harbor's system has detected instances of Metal Exchange employees repeatedly distributing Harbor's reports and alerts, in some cases, to at least 50 unauthorized users in a single day.

26. Harbor first notified Metal Exchange of these issues by way of a letter dated October 25, 2023. While Metal Exchange promised to investigate the matter, Harbor never received a formal response. Instead, upon information and belief, Metal Exchange continued to distribute Harbor's Market Intelligence to unauthorized users.

27. On November 2, 2023, Harbor sent a second letter to Metal Exchange. In response, Metal Exchange assured Harbor that its employees were notified of Harbor's concerns and that Metal Exchange would take corrective action. Metal Exchange evidently did not do so. Instead, upon information and belief, Metal Exchange continued to distribute Harbor's Market Intelligence to unauthorized users.

28. Harbor was left with no choice. Despite its repeated pleas for compliance, violations of the Subscription Agreement continued unabated. On November 3, 2023, in accordance with Section 5 of the Subscription Agreement, Harbor tendered notice of its decision

to terminate Metal Exchange's subscription, with an effective date of November 6, 2023. Remarkably, even as recently as the date of termination, Harbor's system detected additional unauthorized distributions of its Market Intelligence.

29. Harbor's reports, alerts and commentaries comprising its Market Intelligence – including the Market Intelligence distributed to unauthorized Metal Exchange employees and third parties outside the company – are subject to copyrights that are valid and subsisting, and were valid and subsisting at all times affecting the matters complained of herein. Many of the copyrights in and to Harbor's Market Intelligence were registered with the United States Copyright Office. While the breadth and extent of Metal Exchange's violations will be ascertained in discovery, Metal Exchange is believed to have infringed at least the following registered works (the "Harbor Registered Works"):

| Title of Work | Registration No. |
|---|---|
| Aluminum Production Intelligence August 2023 | TX 9-331-311 |
| Aluminum Production Intelligence September 2023 | TX 9-331-310 |
| Aluminum Intelligence Report (July 2023) | TX 9-346-188 |
| Aluminum Price Outlook Report July 2023 | TX 9-320-622 |
| Aluminum Price Outlook Report October 2023 | TX 9-330-761 |
| North America Aluminum Rolled Products Intelligence (August 2023) | TX 9-320-280 |
| North America Aluminum Rolled products intelligence (September 2023) | TX 9-330-757 |
| Harbor's Daily Aluminum Commentary | TX 9-317-331 |
| Harbor's Daily Aluminum Commentary | TX 9-329-975 |
| Harbor's Daily Aluminum Commentary | TX 9-329-971 |
| SPECIAL ANALYSIS! – Middle East Exports (October 17, 2023) | TX 9-346-173 |
| ALERT! - US Extrusions (October 26, 2023) | TX 9-346-191 |
| ALERT! – US Foil Mill (August 30, 2023) | TX 9-345-593 |
| ALERT! – US Rolling Mill (October 26, 2023) | TX 9-346-193 |
| ALERT! – US Rolling Mill (September 11, 2023) | TX 9-346-194 |
| ALERT! – US Mill-Grade Old Sheet (November 1, 2023) | TX 9-345-595 |
| SPECIAL ANALYSIS! - US Rolling Mill Conversion Prices (October 27, 2023) | TX 9-346-167 |
| ALERT! - World Rolling Mill (August 9, 2023) | TX 9-346-057 |
| HARBOR FIRST! – Mexico Canada Scrap (September 25, 2023) | TX 9346-192 |

30. Upon information and belief, Metal Exchange improperly distributed one or more of its Market Intelligence reports and alerts, including the Harbor Registered Works, to unauthorized users, including Metal Exchange employees that have not been designated by Metal Exchange and/or third parties outside of the company. Specifically, upon information and belief, Metal Exchange used a distribution list to distribute Harbor's Market Intelligence to unauthorized individuals within its organization, located both on- and off-site. In addition, upon information and belief, Metal Exchange distributed Harbor's Market Intelligence to third parties located outside of the company, including a former company employee, Dave Riebe.

31. Worse still, Metal Exchange took it upon itself to provide copies of Harbor's Market Intelligence to other industry players, including EGA America Inc., a former Harbor subscriber. Upon information and belief, Metal Exchange shared copies of Harbor's Market Intelligence with the CEO of EGA America Inc., Jake Skelton.

32. In addition to its substantial copyright violations, Metal Exchange breached the terms of its Subscription Agreement with Harbor in *at least* four ways. First, Sections 2.2 and 2.3 require Metal Exchange to designate and register all users at the company who are authorized to receive Harbor's Market Intelligence. Metal Exchange did not designate or pay for the non-subscribing employees on its company distribution list. Second, Section 2.4 of the Subscription Agreement requires all designated users to reside at the same site within the company. Upon information and belief, certain of the users designated by Metal Exchange and non-designated employees who were given copies of Harbor's Market Intelligence do not reside at the same site within the company. Third, under Sections 6.3, 6.4, and 7.1, Metal Exchange is prohibited from sublicensing or allowing third parties access to Harbor's Market Intelligence. Upon information and belief, Metal Exchange provided multiple copies of Harbor's Market Intelligence to third

parties, including a former company employee and a CEO of a former Harbor subscriber. Fourth, under Section 7.4, Metal Exchange was required to notify Harbor if it becomes aware of unauthorized use of Harbor's Market Intelligence.  Metal Exchange did not divulge to Harbor that third parties were provided copies of its Market Intelligence.  Upon information and belief, such acts have been going on for years, without Harbor's knowledge.

33. The net result of these actions is that it deprives Harbor of its ability to monitor and safeguard its proprietary Market Intelligence, especially when in the hands of third parties, and bypasses Harbor's ability to monetize these uses, all to the detriment of Harbor.

34. In addition, Metal Exchange's violations have allowed it (and third parties) the ability to forego the expense of paying the appropriate subscription fee.

35. Upon information and belief, unless enjoined by this Court, Metal Exchange intends to continue to infringe upon Harbor's copyrights and otherwise profit from Harbor's works.  Accordingly, Harbor has suffered irreparable harm.  Harbor has no adequate remedy at law to redress all of the injuries that Metal Exchange has caused, and intends to cause, by its conduct.  Harbor will continue to suffer irreparable damages until Metal Exchange's actions alleged above are enjoined by this Court.

## COUNT ONE
### (Copyright Infringement – 17 U.S.C. § 101, *et seq.*)

36. Harbor repeats and realleges each and every preceding allegation above as if fully set forth herein.

37. Each of the Harbor Registered Works are original works of authorship and constitute copyrightable subject matter under the laws of the United States.

38. Harbor was and is the exclusive holder of all rights, title and interest in and to the Harbor Registered Works, has registered each of the asserted Harbor Registered Works with the U.S. Copyright Office, and is the legal owner of the rights in the aforementioned works.

39. Metal Exchange had and has access to the Harbor Registered Works pursuant to the Subscription Agreement.

40. Upon information and belief, Metal Exchange has improperly distributed the Harbor Registered Works to unauthorized users and third parties without the consent or authority of Harbor, thereby infringing upon Harbor's exclusive rights in the copyrights in and to the Harbor Registered Works, in violation of 17 U.S.C. § 106.

41. Upon information and belief, Metal Exchange's infringement of Harbor's Registered Works is deliberate, willful and in utter disregard of Harbor's rights.

42. For example, based upon the inclusion of the copyright notices contained in Harbor's Market Intelligence, located on Harbor's website, and present in the language in the Subscription Agreement, Metal Exchange knew and/or was on notice that the Harbor Registered Works are protected by copyright law. As such, Metal Exchange is unable to assert a defense of innocent infringement. *See* 17 U.S.C § 401(d).

43. The Subscription Agreement prohibits the distribution of Harbor's Market Intelligence to Metal Exchange users that have not been specifically designated and disclosed to Harbor or are not located at Metal Exchange's principal site, and to any other third parties outside Metal Exchange's organization.

44. Upon information and belief, Metal Exchange willfully infringed the copyrights in and to the Harbor Registered Works, by acting with knowledge that its actions constituted

infringement, or at least with reckless disregard of the possibility that the conduct complained about constitutes infringement.

45. As a direct and proximate result of Metal Exchange's infringement of Harbor's copyrights, Harbor is entitled to damages in an amount to be determined at trial.

46. Alternatively, at its election, Harbor is entitled to the maximum allowable amount of statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

47. Harbor is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

48. Metal Exchange's acts have caused, and will continue to cause, irreparable injury to Harbor. Harbor is thus entitled to damages in an amount to be determined at trial, and reserves the right to seek a permanent injunction.

## COUNT TWO
### (Breach of Contract – Subscription Agreement)

49. Harbor repeats and realleges each and every allegation above as if fully set forth herein.

50. When Metal Exchange entered into the Subscription Agreement, it became bound by a valid and enforceable contract with Harbor.

51. Harbor performed its obligations under the Subscription Agreement and has satisfied all conditions precedent by delivering all reports and other materials described in the Subscription Agreement.

52. Metal Exchange materially and substantially breached the Subscription Agreement in at least four ways: (1) by failing to designate and disclose all company users to receive Harbor's Market Intelligence, (2) by distributing Harbor's Market Intelligence to

individuals not located at Metal Exchange's designated site, (3) by distributing Harbor's Market Intelligence to third parties outside of its organization; and (4) by failing to report unauthorized uses of Harbor's Market Intelligence by the company.

53. As a direct and proximate result of Metal Exchange's breach of its contractual obligations, Harbor has incurred actual, consequential, and special damages.

54. Metal Exchange's acts have caused, and will continue to cause, irreparable injury to Harbor. Harbor is thus entitled to damages in an amount to be determined at trial, and reserves its right to seek a permanent injunction.

## PRAYER FOR RELIEF

WHEREFORE, Harbor respectfully demands:

a. A declaration that Metal Exchange has directly infringed Harbor's copyrights in the Harbor Registered Works;

b. A declaration that Metal Exchange has breached its Subscription Agreement with Harbor;

c. An order, pursuant to 17 U.S.C. § 502, permanently enjoining and restraining Metal Exchange and its owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, affiliates, divisions, and subdivisions and all persons acting in concert or participation with them from directly committing, aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the infringements of Harbor's exclusive rights under the Copyright Act, or from authorizing any other person to do the same;

d. An award, pursuant to 17 U.S.C. § 504, of Harbor's actual damages and Metal Exchange's profits attributable to the infringements or, alternatively at Harbor's

    election, for statutory damages, including such damages for willful infringement, for each of the Harbor Registered Works infringed by Metal Exchange in the maximum amount allowable by law;

e. An award of Harbor's actual, consequential, and special damages attributable to Metal Exchange's breach of the Subscription Agreement;

f. Harbor's costs, including its reasonable attorney's fees, pursuant to 17 U.S.C. § 505;

g. Prejudgment and post-judgment interest according to law; and

h. Such other and future relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Harbor demands a trial by jury on all issues so triable in this action.

Dated:  January 10, 2024

                    BAKER & McKENZIE LLP

By:  */s/ Nicholas O. Kennedy*
Nicholas O. Kennedy
(SBN 24087841)
1900 North Pearl Street, Suite 1500
Dallas, Texas 75201
Tel: (214) 978-3000
nicholas.kennedy@bakermckenzie.com

Michael A. Duffy
(IL Bar No. 6272163)
(*pro hac vice* to be filed)
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Tel: (312) 861-8000
michael.duffy@bakermckenzie.com

Joshua S. Wolkoff
(NY Bar No. 4885695)
(*pro hac vice* to be filed)
452 Fifth Avenue
New York, New York 10018
Tel: (212) 626-4100
joshua.wolkoff@bakermckenzie.com

*Counsel for Harbor Aluminum Intelligence Unit, LLC*